FILED

12 JUL 17 PM 4:01

CLERK US DISTRICT
SOUTHERN DISTRICT OF CALIF.

BY: ___ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. BRADY and PATRICIA M. BRADY, <br><br>            Plaintiffs, <br><br>   vs. <br><br> GRENDENE USA, INC. and GRENDENE S.A., <br><br>            Defendants. | CASE NO. 12cv0604 WQH (KSC) <br><br> **ORDER** |

HAYES, Judge:

The matter before the court is the Motion to Dismiss or, in the Alternative, to Transfer filed by Defendants Grendene S.A. and Grendene USA, Inc. (ECF No. 13).

## PROCEDURAL BACKGROUND

On March 9, 2012, Plaintiffs James W. Brady and Patricia M. Brady initiated this action by filing the Complaint. On March 16, 2012, Plaintiffs filed a First Amended Complaint asserting claims for (1) trademark infringement under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), (3) unfair competition under Cal. Bus. & Prof. Code § 17200, (4) unfair competition under the common law of the state of California, and (5) cancellation of Grendene S.A.'s U.S. Trademark Registration No. 1,908,543 for the mark "IPANEMA" in connection with footwear. (ECF No. 4). Plaintiffs allege that Defendants Grendene USA and Grendene S.A.'s use the name "Ipanema" on their sandals sold in California which creates a likelihood of confusion with Plaintiffs' products in California and elsewhere.

1    On May 2, 2012, Defendants filed a Motion to Dismiss or, in the Alternative, to

2  Transfer on grounds that the court lacks personal jurisdiction over Defendant Grendene S.A.

3  (ECF No. 13). On May 21, 2012, Plaintiffs filed an opposition. (ECF No. 17). On June 4,

4  2012, Defendants filed a reply. (ECF No. 26). On June 7, 2012, Plaintiffs filed a sur-reply.

5  (ECF No. 27-1). On June 18, 2012, Defendants filed a response. (ECF No. 30).

6                                    **UNDISPUTED FACTS**

7    Plaintiffs' company, Made in Brazil, Inc., is the owner of U.S. Trademark Registration

8  Nos. 1,778,404 and 2,842,768 for the marks "IPANEMA" and "THE GIRL FROM

9  IPANEMA" for use in connection with swimwear. (ECF No. 1, ¶¶ 7, 12). Grendene S.A. is

10 the owner of U.S. Trademark Registration No. 1,908,543 for the mark "IPANEMA" in

11 connection with footwear. (Decl. Marcius Dal Bó, ¶ 7; ECF No. 13-2 at 4).

12    Defendants submit the declaration of Marcius Dal Bó, marketing manager of Grendene

13 S.A., who states that "Grendene S.A. is a Brazilian corporation. Grendene USA is a wholly

14 owned subsidiary of Grendene S.A. and has its principal place of business in Orlando,

15 Florida." *Id.* ¶ 3. Dal Bó states that "Grendene USA purchases the accused products from

16 Grendene S.A. FOB Brazil.... Grendene USA takes legal possession of the accused products

17 in Brazil and pays for transportation of the products to its Florida headquarters." *Id.* ¶ 10. Dal

18 Bó states that Grendene S.A. "has never directly manufactured, sold, offered to sell, marketed,

19 or shipped the accused products in or to California or anywhere else in the United States." *Id.*

20 ¶ 12. Dal Bó states that Grendene S.A. does not maintain any stock of goods within California,

21 agents for service of process in California, tangible property in California, or office in

22 California. *Id.* ¶ 13.

23    Defendants submit the declaration of Angelo Daros, Vice President of Grendene USA,

24 who states that "three out of four of Grendene USA's officers are also officers or directors of

25 Grendene S.A. I am the only officer of Grendene USA charged with controlling the day to day

26 operations and internal affairs of Grendene USA and I am not an officer or director of

27 Grendene S.A." (Decl. Angelo Daros, ¶ 3; ECF No. 26-1 at 2). Daros states that "Grendene

28 USA is solely in control of the potential customers it contacts.... [Grendene USA] acquires and

carries its own insurance.... makes its own hiring decisions.... determines what business systems and software to use... [and] does not discuss its day-to-day operations with Grendene S.A." Id. ¶¶ 7, 8.  Daros states that "Grendene USA provides monthly financial reports to Grendene S.A. and Grendene USA management travels to Brazil for meetings with Grendene S.A. 3-4 times each year to discuss the company's activities.... Grendene USA will discuss important hiring decisions, such as manager hires, and other general policy decisions with Grendene S.A. directors for their input." Id. ¶ 8.

Defendants submit a "Commercial Agency Agreement" which defines the relationship between Grendene S.A. and Grendene USA, Inc. (Commercial Agency Agreement; ECF No. 26-1 at 6-12). According to the terms of the Commercial Agency Agreement, Grendene USA "shall perform its activities ... in the UNITED STATES OF AMERICA... [Grendene USA] shall not have exclusivity .... [Grendene S.A.] may conduct business transactions in the same area.... [Grendene S.A.] reserves the right, at any time, to reduce the territory assigned to [Grendene USA].... [Grendene USA] is entitled to carry out activities for another company...provided that such activities are not aimed at selling products that compete, directly or indirectly, with [Grendene S.A.]'s products.... [Grendene S.A.] will determine sales quotas to be met by [Grendene USA]." Id. at 7, 9, 10.

Dal Bó states that "Grendene [S.A.] sold approximately 13 million dollars in footwear to companies based in the United States in 2011, which accounts for about 1% of Grendene [S.A.]'s total revenue. Only about 30% of those sales were made to Grendene USA." (Supp. Decl. Dal Bó, ¶5; ECF No. 26-1 at 14).

Plaintiffs submit the declaration of Plaintiff James Brady who states that "Vix Swimwear is headquartered in San Diego, California and has been a California Corporation since 1998.... Vix Swimwear is a United States company with corporate headquarters in San Diego, California. Vix Swimwear lists its Brazil office as one of several international offices." (Decl. James W. Brady, ¶¶ 3, 8; ECF No. 27-2 at 2, 3).

Dal Bó states that "Grendene [S.A.] sells the VIX IPANEMA footwear to Vix Swimwear in Brazil. Grendene S.A. does not sell the VIX IPANEMA footwear to the

1  California subsidiary of Vix Swimwear. Rather, Vix ships the product to its subsidiary."

2  (Supp. Decl. Dal Bó, ¶5; ECF No. 26-1 at 14 ¶ 4).  Dal Bó states that "Grendene S.A. has not

3  sold VIX IPANEMA footwear to Vix Swimwear, Inc. in California or anywhere else in the

4  United States." (Second Supp. Decl. Dal Bó, ¶ 2; ECF No. 30-1 at 2).

5  <center>**CONTENTIONS OF THE PARTIES**</center>

6  Plaintiffs contend that the contacts of Grendene USA within the forum may be imputed

7  to Grendene S.A. through an agency relationship.  Plaintiffs contend that Grendene S.A. has

8  the right to control Grendene USA and that Grendene USA is sufficiently important to the

9  business of Grendene S.A. to establish an agency relationship.  Plaintiffs assert that Grendene

10  S.A. would either have to forego sales of sandals in the United States, one of the largest

11  consumer markets in the world, or perform the same functions itself, if Grendene USA did not

12  exist. Plaintiffs contend that Defendant Grendene USA is subject to both general and specific

13  jurisdiction, a contention which is uncontested by Defendants.   Plaintiffs seek limited

14  discovery with respect to the issue of personal jurisdiction over Grendene S.A.

15  Defendants contend that the Court lacks personal jurisdiction over Defendant Grendene

16  S.A. on the grounds that Grendene S.A. does not possess the requisite right to control

17  Grendene USA and that Grendene USA is not sufficiently important to the business of

18  Grendene S.A. to support an agency relationship.  Grendene S.A. contends that the relationship

19  between itself and Grendene USA is an appropriate parent-subsidiary relationship.  Grendene

20  S.A. contends that its contacts with California are insufficient to establish either general or

21  specific jurisdiction.  Defendants contend that the entire action must be dismissed because

22  Grendene S.A. is a necessary and indispensable party within the meaning of Fed. R. Civ. P. 19.

23  <center>**APPLICABLE LAW**</center>

24  On a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears

25  the burden of establishing personal jurisdiction. *Farmers Ins. Exchange v. Portage La Prarie*

26  *Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir. 1990).  Where the motion to dismiss is based on

27  written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie*

28  showing of jurisdictional facts to satisfy this burden. *Dole Food Co. v. Watts,* 303 F.3d 1104,

1108 (9th Cir. 2002). While the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. *AT&T v. Campagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996).

A court may exercise general jurisdiction over a foreign defendant when the foreign defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011) (citing *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement,* 326 U.S. 310 (1945)). The assertion of general jurisdiction requires more than "mere purchases, even if occurring at regular intervals." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 418 (1988).

A court exercises specific personal jurisdiction over a defendant where the claim arises out of, or has a substantial connection to, the defendant's contact with the forum. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit analyzes specific jurisdiction according to a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007).

"The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal,* 248 F.3d 915, 925 (9th Cir. 2001) (citing *Transure, Inc. v. Marsh and McLennon, Inc.,* 766 F.2d 1297, 1299 (9th Cir. 1985)). "[A] parent corporation may be directly involved in the activities of its subsidiaries without

1    incurring liability so long as that involvement is 'consistent with the parent's investor status.'"

2    *Unocal*, 248 F.3d at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51 (1998)).

3    "Appropriate parental involvement includes: 'monitoring of the subsidiary's performance,

4    supervision of the subsidiary's finance and capital budget decisions, and articulation of general

5    policies and procedures.'" *Id.*

6         "'If the parent and subsidiary are not really separate entities, or one acts as an agent of

7    the other, local subsidiary's contacts with the forum may be imputed to the foreign parent

8    corporation.'" *Unocal*, 248 F.3d at 926 (quoting *El-Fadl v. Central Bank of Jordan*, 75 F.3d

9    668, 676 (D.C. Cir. 1996)).

10        The agency test is satisfied by a showing that the subsidiary functions as the
          parent corporation's representative in that it performs services that are
11        sufficiently important to the foreign corporation that if it did not have a
          representative to perform them, the corporation's own officials would
12        undertake to perform substantially similar services.

13   *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir. 2011) (quoting *Unocal*, 248 F.3d

14   at 926) (emphasis omitted).  In order to satisfy the agency test, the parent must "have the right

15   of control with respect to the agent" and the agent must perform services of such importance

16   to the parent that "the parent would undertake to perform the services itself *if it had no*

17   *representative at all* to perform them."  *Bauman*, 644 F.3d at 921-22 (emphasis in original).

18        A district court has discretion to permit or deny jurisdictional discovery.  *Boschetto v.*

19   *Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  "Discovery may be appropriately granted

20   where pertinent facts bearing on the question of jurisdiction are controverted or where a more

21   satisfactory showing of the facts is necessary."  *Id.*  Denial of a request of jurisdictional

22   discovery is appropriate where "a plaintiff's claim of personal jurisdiction appears to be both

23   attenuated and based on bare allegations in the face of specific denials made by the

24   defendants."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).  "In order to obtain

25   discovery on jurisdictional facts, the plaintiff must make at least a 'colorable' showing that the

26   Court can exercise personal jurisdiction over the defendant."  *Mitan v. Feeney*, 497 F. Supp.

27   2d 1113, 1119 (C.D. Cal. 2007) (citing *Central States, S.E. & S.W. Areas Pension Fund v.*

28   *Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000)).  "This 'colorable showing'

should be understood as something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Mitan,* 497 F. Supp. 2d at 1119.

## RULING OF THE COURT

The Court concludes that Plaintiffs have made a "colorable" showing of jurisdiction necessary to obtain jurisdictional discovery. *Mitan,* 497 F. Supp. 2d at 1119. A more detailed showing of the facts would aid the Court in determining whether, on the issues of control and importance, the exercise of jurisdiction over Grendene S.A. comports with the due process clause of the Fifth Amendment. The Court concludes that limited jurisdictional discovery is appropriate in this case.

IT IS HEREBY ORDERED that the Motion to Dismiss or, in the Alternative, to Transfer (ECF No. 13) filed by Defendants remains pending. Plaintiffs' request to conduct limited jurisdictional discovery is GRANTED.

The parties are referred to the Magistrate Judge for the purposes of limited jurisdictional discovery, which shall be completed within **sixty (60) days** of the date of this order. Plaintiffs shall file a supplemental response to the Motion to Dismiss within **seventy-five (75) days** of the date of this order. Defendants shall file any supplemental reply within **ninety (90) days** of the date of this order.

DATED: _7/17/12_

WILLIAM Q. HAYES
United States District Judge

- 7 -

12cv0604 WQH (KSC)