1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. BRADY and PATRICIA M. BRADY,<br><br>Plaintiffs,<br><br>v.<br><br><br><br>GRENDENE USA, INC., a Delaware Corporation, and GRENDENE S.A., a Brazil Corporation,<br><br>Defendants.<br>AND RELATED COUNTERCLAIMS | CASE NO. 3:12-cv-0604-GPC-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**[ECF No. 113]**<br><br>**(2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**;<br><br>**[ECF No. 72]** |

## I. INTRODUCTION

Plaintiffs James W. Brady and Patricia M. Brady (collectively, the "Bradys") filed this trademark infringement action alleging that the Defendants Grendene USA, Inc. and Grendene S.A. (collectively, "Grendene") infringed the Bradys' IPANEMA WEAR mark and IPANEMA mark for swimwear by selling footwear bearing the IPANEMA mark. Grendene has filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. (ECF No. 72.) Grendene asserts that it has the

1   right to use the IPANEMA mark on footwear as a result of the assignment of a

2   registered mark for IPANEMA footwear, challenges the Bradys' claim that IPANEMA

3   WEAR and IPANEMA marks extend to footwear, and raises affirmative defenses. The

4   Bradys filed an opposition challenging the claimed assignment and affirmative

5   defenses. (ECF No. 93.) Grendene responded. (ECF No. 108.) The Bradys filed a

6   motion for leave to file a sur-reply accompanied by the proposed sur-reply. (ECF No.

7   113, 113-1.) Good cause appearing, the Court **GRANTS** the Bradys' motion for leave

8   to file a sur-reply; the proposed sur-reply is deemed filed.

9       The parties have fully briefed the motion. (ECF Nos. 72, 93, 108, 113-1.) The

10   Court finds the motion suitable for disposition without oral argument pursuant to Civil

11   Local Rule 7.1(d)(1). Upon review of the moving papers, admissible evidence, and

12   applicable law, the Court **DENIES** Grendene's Motion for Summary Judgment or, in

13   the Alternative, Partial Summary Judgment because there is insufficient evidence to

14   determine whether each of the '404 Mark assignments were valid and the evidence

15   surrounding Grendene's affirmative defenses is disputed.

16                 **II. PROCEDURAL BACKGROUND**

17       On March 9, 2012, the Bradys filed a complaint against Grendene alleging

18   trademark infringement, false designation of origin, and unfair competition. (ECF No.

19   1.) On March 16, 2012, the Bradys a filed a first amended complaint ("FAC"). (ECF

20   No. 4.) On October 4, 2012, this case was transferred to the Honorable Gonzalo P.

21   Curiel. (ECF No. 39.) On September 3, 2013, Grendene answered the FAC and filed

22   two counterclaims for: (1) a declaratory judgment of noninfringement, and (2) a

23   declaratory judgment of invalidity. (ECF No. 56.)

24       On May 30, 2014, Grendene filed this motion for summary judgment or, in the

25   alternative, partial summary judgment. (ECF No. 72.) On June 18, 2014, Grendene

26   filed a notice of errata withdrawing several pages from a declaration by David W.

27   Quinto attached to its motion. (ECF No. 82.) On July 25, 2014, the Bradys filed a

28   response in opposition to Grendene's motion. (ECF No. 93.) On August 1, 2014,

1    Grendene filed a notice of errata correcting a declaration by Michael Bradford attached

2    to its motion. (ECF No. 99.) On August 15, 2014, Grendene replied to the Bradys'

3    opposition. (ECF No. 108.) On September 5, 2014, the Bradys filed a sur-reply. (ECF

4    No. 113-1.)

5                   **III. FACTUAL BACKGROUND**

6         On September 13, 1983, the Ipanema Shoe Corporation ("ISC") obtained a

7    registration in the mark "IPANEMA" from the United States Patent and Trademark

8    Office ("USPTO"). (ECF No. 72-3, Ex. A); IPANEMA, Registration No. 1,251,204

9    (the "'204 Mark"). On January 25, 1990, ISC's IPANEMA mark was cancelled for

10   failure to timely submit a Section 8 affidavit. (ECF No. 72-3, Ex. A.)

11        On January 8, 1991, Made in Brazil, Inc. ("MIB"), the Bradys' past and present

12   employer, (ECF No. 96, ¶ 2), obtained a registration in the IPANEMA WEAR mark

13   from the USPTO. (ECF No. 94-17); IPANEMA WEAR, Registration No. 1,630,915

14   (the "'915 Mark"). On September 26, 1991, MIB applied to register the IPANEMA

15   mark for swimwear with the USPTO, and on June 22, 1993, the USPTO granted MIB's

16   application. (ECF No. 72-3, Ex. B); IPANEMA, Registration No. 1,778,404 (the "'404

17   Mark"). MIB subsequently assigned the '404 Mark to the Bradys. (ECF No. 72-4, Ex.

18   A.) On June 22, 2003, the Bradys renewed the '404 Mark. (ECF No. 94-3.)

19        On November 24, 1992, after learning of the cancellation of the '204 Mark, ISC

20   applied to re-register the IPANEMA mark with the USPTO. (ECF No. 72-3, Ex. C);

21   U.S. Trademark Application Serial No. 74,334,106 (filed November 24, 1992). On

22   March 8, 1993, the USPTO denied ISC's 1992 application in light of MIB's '915

23   Mark. (ECF No. 95-2, at 70.) On July 30, 1993, ISC filed a petition with the Trademark

24   Trial and Appeal Board ("TTAB") seeking to cancel MIB's '915 and '404 Marks. (ECF

25   No. 72-3, at 20.) On January 18, 1994, the USPTO again denied ISC's 1992 application

26   in light of MIB's '404 Mark. (Id. at 52.)

27        On Feburary 16, 1995, MIB and ISC entered into a settlement agreement (the

28   "Settlement Agreement") with the following covenants and conditions:

                  3:12-cv-0604-GPC-KSC

1. MIB, its affiliates, predecessors and successors agree to use the marks IPANEMA and IPANEMA WEAR only in connection with the sale of swimwear and activewear, and not in connection with any footwear;

2. ISC, its affiliates, predecessors and successors agree to make no objection, formally or informally, to the use by MIB, its affiliates, predecessors and successors of the terms IPANEMA or IPANEMA WEAR as a trademark in the selling of swimwear and activewear (excluding all footwear) as long as such use is in accordance with the terms of this Agreement.

3. MIB has executed a Letter of Consent, which is attached to this Agreement as Exhibit A. Further, MIB agrees to execute any further consent papers to assist ISC to register ISC's federal trademark application for the trademark IPANEMA, Serial No. 74/334,106, which is currently pending at the U.S. Patent and Trademark Office.

4. MIB, its affiliates, predecessors and successors agree to make no objection, formally or informally, to the use by ISC, its affiliates, predecessors and successors of the term IPANEMA as a trademark in the selling of footwear as long as such use is in accordance with the terms of this Agreement.

5. This settlement agreement is subject to ISC obtaining registration at the Patent and Trademark Office of its trademark IPANEMA, Serial No. 74/334,106. If ISC cannot obtain registration for the trademark IPANEMA, Serial No. 74/334,106, this Agreement will be null and void. In that event, the rights of ISC and MIB to the name IPANEMA and IPANEMA WEAR will revert to the rights of the respective parties prior to settlement.

6. ISC agrees to stipulate to a suspension of any cancellation proceeding it may have brought against MIB's IPANEMA and IPANEMA WEAR trademark registrations pending the final results of the registration of ISC's application to register IPANEMA, Serial No. 74/334,106.

7. If ISC obtains registration of the trademark IPANEMA, Serial No. 74/334,106, as stated in Paragraphs 5 and 6, ISC agrees to withdraw without prejudice its Petition to Cancel, Cancellation No. 22,022, MIB's registrations for the trademarks IPANEMA WEAR and IPANEMA now pending before the Trademark Trial and Appeal Board.

8. This Agreement shall apply and be binding upon the parties hereto, all related companies, and their respective successors, assigns, officers, directors, agents, employees and attorneys and all those in privity with them. The Agreement will be governed and construed in accordance with the laws of the State of New York.

9. This Agreement constitutes the entire Agreement between the parties hereto with respect to the subject matter hereof, and any modification of this Agreement shall be in writing and shall be signed by a duly authorized representative of each party. There are no understandings, representation or warranties except as herein expressly set forth.

10. This Agreement may be executed in counterparts, each of which shall be deemed an original but together shall constitute one and the same

1
2
instrument. IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed by their duly authorized representatives and intend to be bound by this Agreement as of the date first set forth below.

3   (ECF No. 72-4, Ex. D.) On August 1, 1995, the USPTO granted ISC's 1992 application

4   for the IPANEMA trademark for footwear. (ECF No. 72-3, at 16); IPANEMA,

5   Registration No. 1,908,543 (the "'543 Mark").

6       In 1993, ISC sold various types of women's woven leather shoes bearing the

7   IPANEMA mark—including flats, pumps, and slings—that were either open-toed,

8   closed-toed, or snip-toed. (ECF No. 108-3,[1] Ex. A, at 9.) In 1997, ISC sold women's

9   sandals with a velcro closure and metal accents. (ECF No. 108-4, Ex. B, at 10.)

10  Through at least June 3, 1999, ISC sold footwear bearing the IPANEMA mark. (ECF

11  No. 108-2 ¶ 2; ECF No. 108-4, Ex. D.)

12      On October 5, 1999, ISC purported to assign the '543 Mark to Utopia Marketing,

13  Inc. ("Utopia"). (ECF No. 108-8.) On October 20, 1999, Utopia filed a Form 8-K with

14  the United States Securities and Exchange Commission ("SEC") stating that Utopia

15  "intends to continue to operate the business formerly conducted by Ipanema with the

16  purchased assets for the foreseeable future." (ECF No. 108-7, at 19.) However, on

17  March 22, 2000, Utopia filed a Form 8-K/A with the SEC stating that Utopia "intends

18  to utilize the Ipanema brand for a different line of shoe products" and "has significantly

19  changed the line of products sold under the Ipanema brand name." (ECF No. 95-14, at

20  599.) On November 3, 2000, Utopia filed for bankruptcy. (ECF No. 108-12.) On

21  November 11, 2000, Utopia filed a Form 10-QSB with the SEC stating that, during the

22  nine months prior to September 30, 2000, Utopia generated $6,644,000 selling

23  products under the NAKEDFEET and IPANEMA marks. (ECF No. 108-10, at

24  131–32.)

25      In 2002, Utopia's bankruptcy trustee purportedly assigned the '543 Mark to

26  Consolidated Shoe Corporation ("CSC") "with the good will of the business connected

27

28      [1] References to the exhibits attached to ECF No. 108-2, (ECF Nos. 108-3– 108-17), refer to the page numbers stamped in the bottom right corner of each page.

1    with the use of and symbolized by the mark." (ECF No. 108-13, Ex. K, at 162.) In July

2    2003, CSC started selling footwear under the IPANEMA mark. (See ECF No. 95-17.)

3    In the spring of 2007, CSC sold twelves types of women's shoes bearing the

4    IPANEMA mark, including several types of cross strap sandals, an open-toed wedge

5    with a slingback, a kitten heel, and several flats. (See ECF No. 108-14.[2])

6         On May 18, 2004, the Bradys obtained a registration in the "THE GIRL FROM

7    IPANEMA" mark from the USPTO. (ECF No. 94-3); THE GIRL FROM IPANEMA,

8    Registration No. 2,843,768. In 2004, the Bradys discussed the various IPANEMA

9    marks as well as potential licensing with Grendene. (ECF No. 98-2, Exs. 7–8.)

10        On October 9, 2007, CSC purported to assign the '543 Mark to Grendene for

11   $500,000. (ECF Nos. 108-15, 108-16.) Starting in 2008 and continuing through 2011,

12   the Bradys again discussed the various IPANEMA marks and potential licensing with

13   Grendene. (ECF No. 94, ¶ 18–19; ECF No. 98-2, Exs. 10–12.) In 2009 and 2010, the

14   Bradys filed five lawsuits against alleged infringers of the Bradys' rights in the

15   IPANEMA mark. (ECF No. 94, ¶ 24.) The Bradys settled all five lawsuits. (Id. ¶ 25.)

16        On October 11, 2010, Grendene first sold footwear under the IPANEMA mark

17   in the U.S. to ViX Swimwear, Inc ("ViX"). (ECF No. 95-16, at 724.) At the end of

18   2011, the Bradys became aware of ViX's sales of Grendene's footwear bearing the

19   IPANEMA mark. (ECF No. 94, ¶ 31.)

20        The Bradys allege five causes of action against Grendene: (1) trademark

21   infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C.

22   § 1125(a); (3) unfair competition under California Business and Professions Code §

23   17200; (4) unfair competition under California common law; and (5) cancellation of

24   U.S. Trademark Registration No. 1,908,543 under 15 U.S.C. § 1119. (FAC.) Grendene

25   asserts numerous defenses against the Bradys' causes of action. (See ECF No. 56, at

26   7–11.) In addition to moving for summary judgment on all five causes of action,

27

28        [2] Due to the low quality of the images submitted to the Court in ECF No. 108-14, the Court's description of the shoes is approximate.

1   Grendene is also moving for summary judgment on two of its affirmative defenses: (1)

2   laches, and (2) acquiescence. (ECF No. 72.)

3                              **IV. LEGAL STANDARD**

4         Federal Rule of Civil Procedure 56 empowers the Court to enter summary

5   judgment on factually unsupported claims or defenses, and thereby "secure the just,

6   speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477

7   U.S. 317, 325, 327 (1986); FED. R. CIV. P. 56. Summary judgment is appropriate if the

8   "pleadings, depositions, answers to interrogatories, and admissions on file, together

9   with the affidavits, if any, show that there is no genuine issue as to any material fact

10  and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P.

11  56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty

12  Lobby, Inc., 477 U.S. 242, 248 (1986).

13        The moving party bears the initial burden of demonstrating the absence of any

14  genuine issues of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy

15  this burden by demonstrating that the nonmoving party failed to make a showing

16  sufficient to establish an element of his or her claim on which that party will bear the

17  burden of proof at trial. Id. at 322–23. If the moving party fails to bear the initial

18  burden, summary judgment must be denied and the Court need not consider the

19  nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60

20  (1970).

21        Once the moving party has satisfied this burden, the nonmoving party cannot rest

22  on the mere allegations or denials of his pleading, but must "go beyond the pleadings

23  and by her own affidavits, or by the 'depositions, answers to interrogatories, and

24  admissions on file' designate 'specific facts showing that there is a genuine issue for

25  trial.'" Celotex, 477 U.S. at 324 (citing FED. R. CIV. P. 56 (1963)). If the non-moving

26  party fails to make a sufficient showing of an element of its case, the moving party is

27  entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole

28  could not lead a rational trier of fact to find for the nonmoving party, there is no

1   'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

2   574, 587 (1986) (citing FED. R. CIV. P. 56 (1963)). In making this determination, the

3   Court must "view [] the evidence in the light most favorable to the nonmoving party."

4   Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in

5   credibility determinations, weighing of evidence, or drawing of legitimate inferences

6   from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

7   ### V. EVIDENTIARY OBJECTIONS

8   Grendene objects to the Declaration of James W. Brady, (ECF No. 94). (ECF No.

9   108-19.) The Bradys responded to the Grendene's evidentiary objections. (ECF

10  No.115.)

11  First, Grendene argues that the sham affidavit rule excludes several paragraphs

12  of Mr. Brady's declaration. (ECF No. 108-19, at 2–7.) The Ninth Circuit has held that

13  the sham affidavit rule applies to "testimony that flatly contradicts earlier testimony in

14  an attempt to "create" an issue of fact and avoid summary judgment." Kennedy v.

15  Allied Mut. Ins. Co., 952 F.2d 262, 267 (9th Cir. 1991). In this case, Mr. Brady's

16  declaration does not "flatly contradict" his deposition testimony from a separate

17  litigation. Moreover, Mr. Brady has not yet been deposed in the instant case and thus

18  the Court finds that the sham affidavit rule does not bar portions of his declaration. See

19  id. at 266. ("a party who has been examined at length on deposition could raise an issue

20  of fact simply by submitting an affidavit contradicting his own prior testimony, this

21  would greatly diminish the utility of summary judgment as a procedure for screening

22  out sham issues of fact") (citations omitted).

23  Second, Grendene argues that the parol evidence rule bars portions of Mr.

24  Brady's declaration (ECF No. 108-19, at 8–9). Grendene objects to Mr. Brady's

25  characterization of the Settlement Agreement. (See ECF No. 94 ¶ 11.) As Mr. Brady's

26  characterization of the Settlement Agreement is immaterial to the Court's ruling on this

27  motion, the Court has not considered the challenged evidence. To the extent that any

28  objected-to-evidence is relevant and relied on by the court herein, the court overrules

1  any asserted objections to that evidence.

2  Third, Grendene argues that portions of Mr. Brady's declaration lack foundation

3  and misstate evidence. (ECF No. 108-19, at 9–10.) Grendene objects to one paragraph

4  in Mr. Brady's declaration that characterizes negotiations between the parties. (See

5  ECF No. 94 ¶ 21.) As these portions are immaterial to the Court's ruling on this

6  motion, the Court has not considered the challenged evidence. To the extent that any

7  objected-to-evidence is relevant and relied on by the court herein, the court overrules

8  any asserted objections to that evidence.

9  Fourth, Grendene argues that portions of Mr. Brady's declaration are irrelevant.

10  (ECF No. 108-19, at 10–11.) Grendene objects to one paragraph of Mr. Brady's

11  declaration that references the amount of IPANEMA products sold by the Bradys. (See

12  ECF No. 94 ¶ 5.) As that paragraph is immaterial to the Court's ruling on this motion,

13  the Court has not considered the challenged evidence. To the extent that any

14  objected-to-evidence is relevant and relied on by the court herein, the court overrules

15  any asserted objections to that evidence.

16  Fifth, Grendene argues that portions of Mr. Brady's declaration contains hearsay

17  and legal conclusions. (ECF No. 108-19, at 11–12.) Grendene objects to four

18  paragraphs of Mr. Brady's declaration that reference confusion. (See ECF No. 94 ¶¶

19  32–35.) As those paragraphs are immaterial to the Court's ruling on this motion, the

20  Court has not considered the challenged evidence. To the extent that any

21  objected-to-evidence is relevant and relied on by the court herein, the court overrules

22  any asserted objections to that evidence.

23  The Bradys object to Exhibit G of the Declaration of David W. Quinto, (ECF No.

24  72-3). (ECF No. 93-2.) Grendene responded to the Bradys' evidentiary objections.

25  (ECF No. 109.) The Bradys argue that portions of Mr. Brady's deposition from a

26  different litigation are inadmissible under Federal Rule of Evidence 701. (ECF No. 72-

27  3, at 1); FED. R. EVID. 701. Grendene argues that those portions are admissible to show

28  what Mr. Brady had communicated to Grendene and that Mr. Brady did not object to

Grendene's use of the IPANEMA mark. (ECF no. 109, at 1–2.) The Court finds that the portions of Mr. Brady's transcript are admissible to show what, if anything, Mr. Brady communicated to Grendene.

## V. DISCUSSION

### A. Settlement Agreement

#### 1. Successor in Interest

Grendene argues that the Settlement Agreement bars all five causes of action against Grendene. (ECF No. 72-1, at 15, 17.) The fourth covenant and condition of the Settlement Agreement states that "MIB its affiliates, predecessors and successors agree to make no objection, formally or informally, to the use by ISC, its affiliates, predecessors and successors of the term IPANEMA as a trademark in the selling of footwear as long as such use is in accordance with the terms of this Agreement." Additionally, the only condition precedent to the Settlement Agreement was "ISC obtaining registration at the Patent and Trademark Office of its trademark IPANEMA, Serial No. 74/334,106." On August 1, 1995, ISC did obtain registration of the IPANEMA trademark. (ECF No. 72-3, at 23); IPANEMA, Registration No. 1,908,543.

The main issue in determining the parties' rights under the Settlement Agreement is whether Grendene is a successor in interest to ISC under the Settlement Agreement. The parties do not dispute that the successor to ISC's Settlement Agreement rights is the person or entity who has been validly assigned the '543 Mark that ISC obtained as a condition precedent to the Settlement Agreement. (See ECF No. 93, at 14–15.) As the parties do not dispute that each entity in the chain of assignment purported to assign the '543 Mark—ISC to Utopia, Utopia to CSC, and CSC to Grendene—the issue is whether those assignments were valid.

#### 2. Assignment Validity

For a trademark assignment to be valid, the Lanham Act requires that the mark must be assigned "with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by

the mark." 15 U.S.C. § 1060(a)(1); <u>E. & J. Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1289 (9th Cir. 1992). If a mark is assigned without either the goodwill of the business or the goodwill connected with the use of and symbolized by the mark, the assignment is invalid as an assignment in gross. <u>E. & J. Gallo Winery</u>, 967 F.2d at 1289. The mere recitation in the assignment that the goodwill has been assigned with the mark is not dispositive. <u>Money Store v. Harriscorp Finance, Inc.</u>, 689 F.2d 666, 676 (7th Cir. 1982). While the transfer of an entire business or its tangible assets may support a finding that goodwill accompanied the mark, such a transfer is not necessary. <u>See</u> <u>E. & J. Gallo Winery</u>, 967 F.2d at 1289 (citing <u>Money Store</u>, 689 F.2d at 676). To determine whether the goodwill was assigned with the mark, the Court makes a case-by-case determination whether the products or services offered by the assignee under the mark are substantially similar to those that were offered by the assignor under the mark. <u>See</u> <u>Glow Industries, Inc. v. Lopez</u>, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003) (citations omitted); <u>PepsiCo, Inc. v. Grapette Co.</u>, 416 F.2d 285, 288 (8th Cir. 1969). Moreover, the mere fact that two uses are in the same trademark class does not establish that the two uses are substantially similar for the purposes of determining assignment validity. <u>PepsiCo</u>, 416 F.2d at 288. <u>See, e.g.</u>, <u>Marshak v. Green</u>, 746 F.2d 927 (2d Cir. 1984) (two musical groups different from each other); <u>PepsiCo</u>, 416 F.2d 285 (pepper syrup different from cola syrup); <u>Atlas Beverage Co. v. Minneapolis Brewing Co.</u>, 113 F.2d 672 (8th Cir. 1940) (whiskey different from beer); <u>Indep. Baking Powder Co. v. Boorman</u>, 175 F. 448 (C.C.D.N.J. 1910) (alum baking powder different from phosphate baking powder); <u>Clark & Freeman Corp. v. Heartland Co. Ltd.</u>, 811 F. Supp. 137 (S.D.N.Y. 1993) (men's shoes and hiking boots different from women's pixie boots).

As the case law makes clear, the differences between the footwear sold by ISC and the footwear sold by Utopia are important, Grendene's assertion to the contrary notwithstanding, (<u>see</u> ECF No. 108, at 6). Citing Utopia's Form 8-K/A filing with the SEC on March 22, 2000, the Bradys assert that the Utopia's use was not substantially

1   similar to ISC's use of the IPANEMA mark. (ECF No. 95-14, at 599 (stating that

2   Utopia "intends to utilize the Ipanema brand for a different line of shoe products" and

3   "has significantly changed the line of products sold under the Ipanema brand name").)

4   Grendene counters by arguing that the uses were substantially similar because the uses

5   by ISC and Utopia fell within the same class of item. (ECF No. 108, at 6.)

6        The evidence does not tell the Court enough about the products sold by ISC and

7   those sold by Utopia to determine whether they are substantially similar. While the

8   Court has been provided images of the women's woven leather shoes sold by ISC in

9   1993 and the women's velcro sandal sold by ISC in 1997, the Court has no evidence

10  of the full line of shoes bearing the IPANEMA mark sold by ISC in 1999 when it

11  purported to transfer the IPANEMA mark to Utopia. Additionally, the advertisements

12  for IPANEMA products from the years that Utopia purportedly owned the IPANEMA

13  mark either do not contain images or, if they do contain images, are unclear as to

14  whether that imaged product was sold by Utopia under the IPANEMA mark. (See, e.g.,

15  ECF No. 108-11, Ex. I, at 138, 140, 144.) Without pictures or detailed descriptions of

16  the IPANEMA products sold by both ISC and Utopia contemporary to the alleged

17  assignment between those two companies, the Court cannot determine whether the

18  products are substantially similar for purposes of assignment validity. The mere

19  assertion that the items were both sandals or both shoes is insufficient. (See ECF No.

20  108, at 7.) Without such pictures or detailed descriptions, Grendene has failed to carry

21  its burden because showing that items are within the same trademark class does not

22  prove that the items are substantially similar. Moreover, the Court would need pictures

23  or detailed descriptions of IPANEMA products sold contemporary with each alleged

24  assignment to be able to determine whether all the assignments were valid.

25       As the evidence regarding ISC's assignment of the IPANEMA mark to Utopia

26  disputes the assignment's validity, it is unnecessary to determine whether subsequent

27  assignments were valid. A reasonable finder of fact could determine that ISC's

28  assignment of the IPANEMA mark to Utopia was invalid and thus Grendene is not

ISC's successor in interest to the Settlement Agreement. Accordingly, the Court DENIES Grendene's motion for summary judgment on all five causes of action and now considers Grendene's affirmative defenses.

**B. Acquiescence**

There are three elements to a prima facie case of acquiescence: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 989 (9th Cir. 2010) (citing Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1558 (11th Cir. 1991).

Drawing on statements from a deposition taken in 2010 in a different litigation, Grendene asserts that the Bradys implied that they would not object to Grendene selling sandals with the IPANEMA mark in the U.S. (See ECF No. 72-3, Ex. G at 35:5–36:16.) In contrast, the Bradys assert that they "repeatedly told Grendene" that it would need a license from the Bradys to sell sandals with the IPANEMA mark in the U.S. (See ECF No. 94, ¶ 17.) As the parties dispute the representations made my the Bradys, a reasonable finder of fact could determine that the Bradys did not actively represent that they would not assert a claim against Grendene. Accordingly, the Court DENIES Grendene's motion for summary judgment on its affirmative defense of acquiescence.

**C. Laches**

In determining whether laches applies, the Court focuses on two issues: (1) "was the plaintiff's delay in bringing suit unreasonable?," and (2) "was the defendant prejudiced by the delay?" Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 990 (9th Cir. 2009) (citations omitted). If a plaintiff files suit within the applicable statute-of-limitations period, there is a presumption against laches. Id. (citing Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, at 835–36 (9th Cir.

2002)). The start of a plaintiff's delay begins when the plaintiff "knew or should have known about its potential cause of action." Tillamook, 465 F.3d at 1108. The causes of action in this case are based on trademark infringement. "The likelihood of confusion is the central element of trademark infringement," thus a plaintiff's delay begins when the plaintiff "knew or should have known about the likelihood of confusion between" the two marks. Internet Specialties, 559 F.3d at 990 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000)).

After determining whether there is a presumption for or against laches, the Court then turns to the six E-Systems factors in assessing whether laches bars relief: "(1) strength and value of trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by junior user because of senior user's delay." Internet Specialties, 559 F.3d at 991 n.3 (quoting E-Sys., Inc. v. Monitek, Inc., 720 F.2d 604, 607 (9th Cir. 1983)).

Grendene attempts to tack the period prior to its acquisition of the IPANEMA mark for the purposes of laches and argue for a laches period of nearly eight years. (See ECF No. 72-1, at 21–23.) Assignees can only tack periods of use by assignors where the mark is assigned with the goodwill of the business to which it is attached. PepsiCo, 416 F.2d at 286–87; Tandy Corp. v. Malone & Hyde, Inc., 769 F.2d 362, 362 (6th Cir. 1985). As the validity of the assignment from ISC to Utopia is disputed, the validity of the assignments from Utopia to Consolidated Shoe and from Consolidated Shoe to Grendene are also inherently disputed. A reasonable finder of fact could determine that the Bradys only knew or should have known about their potential cause of action for trademark infringement in 2011. Accordingly, the Court DENIES Grendene's motion for summary judgment on its affirmative defense of laches.

**D. Monetary Relief**

In the alternative, Grendene moves for partial summary judgment that the Bradys are not entitled to monetary relief. (ECF No. 72-1, at 23.) Grendene's partial summary

judgment motion is premised on a finding of laches, which the Court has not granted

Grendene summary judgment on. Accordingly, the Court DENIES Grendene's partial

summary judgment that the Bradys are not entitled to monetary relief.

## VI. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The Bradys' Motion for Leave to File Sur-Reply in Opposition to Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, (ECF No. 113), is **GRANTED** and the proposed sur-reply, (ECF No. 113-1), is deemed filed; and

2. Grendene's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, (ECF No. 72), is **DENIED**.

DATED: November 12, 2014

HON. GONZALO P. CURIEL
United States District Judge