1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10   JAMES W. BRADY and PATRICIA          CASE NO. 3:12-cv-0604-GPC-KSC

11   M. BRADY,
                                          **ORDER:**
12                          Plaintiffs,
                                          **(1) GRANTING IN PART AND**
13        v.                              **DENYING IN PART THE BRADYS'**
                                          **MOTION FOR CONTEMPT AND**
14                                        **TO DECLARE DEFENDANTS**
                                          **VEXATIOUS LITIGANTS;**
15   GRENDENE USA, INC., a Delaware
                                          **(2) VACATING HEARING DATE**
16   Corporation, and GRENDENE S.A., a
     Brazil Corporation,                  **[ECF No. 210]**
17
                          Defendants.
18    AND RELATED COUNTERCLAIMS

19

20                                **I. INTRODUCTION**

21        Before the Court is Plaintiffs James W. Brady and Patricia M. Brady's

22   (collectively, the "Bradys") Motion for Contempt for Repeated Violations of Protective

23   Order, and to Declare Defendants Vexatious Litigants. (ECF No. 210.)[1] Defendants

24   Grendene USA, Inc. and Grendene S.A. (collectively, "Grendene") oppose. (ECF No.

25   218.)

26        The parties have fully briefed the motion. (ECF Nos. 210, 218, 220.)The Court

27   _____

28        [1] On March 31, 2015, the Bradys filed an amended version of their memorandum
     of points and authorities supporting their motion. (ECF No. 213.)

finds the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Upon review of the moving papers, admissible evidence, and applicable law, the Court GRANTS the Bradys' motion as to contempt and DENIES the Bradys' motion as to declaring Grendene and its counsel vexatious litigants.

## II. BACKGROUND

On March 9, 2012, the Bradys filed a complaint against Grendene alleging trademark infringement of their IPANEMA mark (the "Trademark Action" or "this case"). (ECF No. 1.) On September 27, 2012, a protective order was entered in this case by Magistrate Judge Karen S. Crawford (the "Protective Order"). (ECF No. 38.) On December 15, 2014, Grendene filed a complaint against the Bradys alleging that filing the Trademark Action constituted a breach of a settlement agreement between Made in Brazil, Inc. ("MIB"), the Bradys' company, and the Ipanema Show Corporation, Grendene's alleged predecessor-in-interest, that is at issue in the Trademark Action (the "Breach of Contract Action"). Complaint, *Grendene USA, Inc. v. Brady*, 3:14-cv-2955-GPC-KSC (S.D. Cal. Dec. 15, 2014), ECF No. 1.

On February 3, 2015, Grendene USA filed a complaint with the World Intellectual Property Organization alleging that the Bradys registered their new website, http://www.ipanemaus.com, in bad faith because it was similar to Grendene USA's website, http://www.ipanemausa.com (the "WIPO Action"). (ECF No. 210-3, Ex. 1.) The WIPO Action was filed against the Bradys' daughter as http://www.ipanemaus.com was registered in their daughter's name. (*Id.*)

On February 27, 2015, Grendene USA filed a complaint against the Bradys, their daughter, and MIB in the United States District Court for the Middle District of Florida alleging trademark infringement and unfair competition (the "Florida Action"). *Grendene USA, Inc. v. Brady*, 6:15-cv-0314-CEM-GJK (M.D. Fla. Feb. 27, 2015), ECF No. 1.

On March 2, 2015, Grendene's law firm, Kupferstein Manuel & Quinto LLP ("KMQ"), filed a complaint against the Bradys in Los Angeles Superior Court alleging

breach of contract, fraud, and unfair competition (the "KMQ Action"). (ECF No. 210-3, Ex. 3.) The KMQ Action arises out of the Bradys' alleged failure to fulfill an order for a $68 swimsuit placed by one of KMQ's agents through the Bradys' website. (*Id.*) Based on these allegations, KMQ seeks $68 in actual damages and $6800 in punitive damages. (*Id.*)

In bringing these lawsuits, the Bradys allege that Grendene and KMQ have "repeatedly violated the protective order in this case." (ECF No. 210-1, at 7, 12–13.) Based on these alleged violations, the Bradys move this Court to: (1) find Grendene and KMQ in contempt, (2) order Grendene and KMQ to dismiss all four of their actions against the Bradys, (3) order Grendene and KMQ to pay the Bradys' attorney fees, and (4) declare Grendene and KMQ vexatious litigants. (ECF No. 210-1, at 13–14.)

## IV. LEGAL STANDARD

### A. Contempt

Federal Rule of Civil Procedure 70(e) allows the Court to find a party in contempt for failure to comply with a court order. FED. R. CIV. P. 70. In the Ninth Circuit, the moving party has the initial burden to show "by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (citation and quotation marks omitted). Once the moving party has satisfied its burden, the "burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (citation and quotation marks omitted). Generally, a violation is found where a party fails "to take all reasonable steps within the party's power to comply" with a court order. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citation and quotation marks omitted). However, good faith actions based on reasonable interpretations of a court order are a defense to civil contempt. *Id.* (citation and quotation marks omitted).

### B. Vexatious Litigants

"The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the

inherent power to enter pre-filing orders against vexatious litigants. However, such pre-filing orders are an extreme remedy that should rarely be used." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) (internal citations omitted). "A pre-filing review order is appropriate if (1) the plaintiff is given adequate notice and an opportunity to oppose the order; (2) the Court compiles an adequate record for review; (3) the Court makes substantive findings as to the frivolous or harassing nature of the litigant's actions; and (4) the order is narrowly tailored 'to closely fit the specific vice encountered.'" *Missud v. Nevada*, 861 F. Supp. 2d 1044, 1055 (N.D. Cal. 2012) *aff'd* 520 F. App'x 534 (9th Cir. 2013) (citations omitted). Before issuing a pre-filing injunction, the Court must make a substantive finding of "the frivolous or harassing nature of the litigant's actions" that looks at "both the number and content of the filings." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990) (quoting *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam)).

## V. DISCUSSION

### A. Protective Order

The Protective Order states that "[a]ll Protected Material shall be used solely for this litigation . . . and not for any other purpose whatsoever, including without limitation any other litigation . . . ." (ECF No. 38, at 4.) The Protective Order further states that it does not "restrict in any way a Producing Party's use or disclosure of its own Protected Material" or restrict the disclosure of Protected Material "that is or has become publicly known through no fault of the Receiving Party." (*Id.* at 5.) Though Grendene argues that this motion should have been brought before Magistrate Judge Crawford, (ECF No. 218, at 2), this is incorrect as this case is neither a civil consent nor a misdemeanor case where federal law specifically allows magistrate judges to "exercise the civil contempt authority of the district court." 28 U.S.C. § 636(e)(4).

#### 1. The Bradys' Sales

The Bradys marked reports showing the income and expenses of their swimwear business between 1999 and 2009 as Confidential – Attorneys' Eyes Only ("AEO").

1   (ECF No. 212, Ex. 4.) In the WIPO Action, Grendene alleges that "[t]he Bradys'
2   swimwear business, whose sales were always miniscule by any standard, went into a
3   steady, sharp decline from the mid-1990s through 2006." (ECF No. 210-3, Ex. 1, at 7.)
4   In the Florida Action, Grendene attached the complaint from the WIPO Action. (ECF
5   No. 210-3, Ex. 2.)

6       Grendene does not dispute that the information was designated AEO, but does
7   proffer five reasons why the allegations in the WIPO Action and Florida Action were
8   not violations of the Protective Order. (ECF No. 218, at 10–12.) First, Grendene points
9   to the fact that the Bradys have publicly quoted the same allegations in their present
10  motion. (*Id.* at 10.) However, the plain language of the Protective Order allows
11  disclosure of certain information that is publicly known at the time it is disclosed, not
12  the disclosure of information that subsequently becomes publicly known. (*See* ECF No.
13  38, at 5.) Thus the Bradys's actions subsequent to Grendene's alleged violations do not
14  absolve those disclosures.

15      Second, Grendene points to the fact that the Bradys waited until two months after
16  the WIPO Action was filed before filing their present motion and never sought to meet
17  and confer with Grendene about the issue. (ECF No. 218, at 10.) However, Grendene
18  cites no authority showing that a two month delay forfeits a Rule 70 motion or that
19  attempting to resolve a protective order issue with an opposing party is required before
20  filing a Rule 70 motion.

21      Third, Grendene points to the Bradys' statement that they did not sell swimwear
22  in 2013 and that the Bradys did not "advertise or promote their products, exhibit at
23  trade shows, release new swimwear lines, update their Web site, or sell their products
24  in more than a handful of stores" between 2007 and 2013. (ECF No. 218, at 10; ECF
25  No. 117 ¶ 7.[2]) Contrary to Grendene's assertion, one could not "easily discern" that the
26  Bradys' sales declined between 1999 and 2009 based off information concerning the

27

28      [2] Grendene incorrectly cites to paragraph 13 of ECF No. 117 rather than
        paragraph 7.

years 2007 through 2013 as it is quite possible that sales could have been rising between 1999 and 2007 yet falling between 2007 and 2013. (ECF No. 218, at 10.)

Fourth, Grendene points to language from this Court's public November 12, 2014 order, (ECF No. 147, at 3, 12). (ECF No. 218, at 10–11.) Again, the information in that order largely pertains to the Bradys' swimsuit sales between 2007 and 2013. (*See* ECF No. 147, at 3, 12 (referring to sales "[b]etween 2007 and 2013" and "the half decade prior to this lawsuit").) The only reference to sales between 1999 and 2009 is the statement that "[b]etween 1999 and 2007, the Bradys sold over $2 million worth of swimsuits bearing the IPANEMA and BLACK BEAN marks," yet this reference does not say whether the sales are increasing, declining, or remaining flat. (*Id.* at 3.)

Fifth, Grendene points to language contained in the Bradys' public ex parte motion to seal. (ECF No. 78-1, Exs. 1–2.) The Bradys' ex parte motion was filed because Grendene had initially filed a joint discovery statement publicly, (ECF No. 74), forcing the Bradys to seek to seal that statement. (ECF No. 139, at 1.) The Bradys' ex parte motion publicly included Grendene's statement that "sales of Ipanema Swimwear were declining for years" above a chart listing the years 1999 through 2009. (ECF No. 78-1, Exs. 1–2.) In ruling on the Bradys' ex parte motion, Magistrate Judge Crawford noted that when the Bradys brought the failure to seal to Grendene's attention, Grendene "refused to withdraw the filings and instead attempted to defend their actions by challenging the designation" which forced the Bradys to file the ex parte motion. (ECF No. 139, at 8–9.) Based on Grendene's actions, Magistrate Judge Crawford ordered that the joint statement be sealed and awarded the Bradys attorney fees. (*Id.*) Though the Bradys had publicly filed the information, they only did so because of Grendene's refusal to abide by the terms of the Protective Order. (*See id.*) Thus the Court finds that at least some of the fault lies with Grendene which prevents Grendene from using the Protective Order's "no fault" exception. (*See* ECF No. 38, at 5.) Additionally, Grendene's argument that the Bradys have failed to remedy other Protective Order violations does not somehow absolve Grendene of its own violations

unless it fits under one of the exceptions. (*See id.*)

As the information regarding the Bradys' sales between 1999 and 2009 had been designated confidential and was never publicly disclosed through no fault of Grendene, the Court finds that Grendene has violated the Protective Order in both the WIPO Action and Florida Action. Because the Bradys have shown by "clear and convincing evidence" that Grendene failed to comply with the Protective Order, the burden shifts to Grendene to show "why they were unable to comply." *In re Bennett*, 298 F.3d at 1069. Grendene makes no such showing. In fact, Grendene states that "the WIPO Action is not based upon the Bradys' declining sales" and striking the statement "would have no effect on Grendene's claim." (ECF No. 218, at 4.) Grendene's statement makes clear that it failed "to take all reasonable steps" within its power to comply with the Protective Order and thus the Court holds Grendene in contempt pursuant to Rule 70(e).[3] *Reno Air Racing Ass'n*, 452 F.3d at 1130.

### 2. The Bradys' Daughter's Testimony

The Bradys' daughter was deposed on November 14, 2014, and portions of pages 82 through 84 of the deposition transcript's first volume were marked Confidential – Attorneys' Eyes Only. (ECF No. 212, Ex. 5.) In the KMQ Action, KMQ alleges in its complaint that the Bradys' daughter admitted, in her deposition, "that she was responsible for fulfilling any online orders that [the Bradys] received, but claimed that she did not understand how [the Bradys'] online ordering system works" and "that [the Bradys] had shipped a swimsuit to a customer in fulfillment of at least one other online order she had received." (ECF No. 210-1, at 9.) Grendene responds that this information had been previously disclosed in a joint discovery motion. (*See* ECF No. 194, at 8, 12 n.11.) However, that joint motion was filed on March 3, 2015, and the complaint in the KMQ Action was filed the day before, on March 2, 2015. (*See* ECF No. 194; ECF No. 210-3, Ex. 3.) Thus at the time that KMQ filed its complaint, that

---

[3] As the Court has found merit in the Bradys' motion, the Court DENIES Grendene's request for attorney fees. (ECF No. 218, at 21.)

1 information had not yet been publicly disclosed.

2      Even if the joint discovery motion had been filed before KMQ's complaint, the
3 language that Grendene points to was contained in Grendene's portion of the joint
4 discovery motion. (ECF No. 194, at 8, 12 n.11.) As Magistrate Judge Crawford
5 previously noted, it is Grendene's responsibility to ensure that its portions of a joint
6 motion comply with the Protective Order regardless of whether it submitted those
7 portions to the Bradys prior to the motion's filing. (ECF No. 139, at 8 n.4 ("However,
8 the fact that the plaintiffs filed the Joint Motion does not relieve defendants of their
9 obligation to ensure that their contributions to the Motion comply with the terms of the
10 Protective Order, nor does it result in a waiver of the plaintiffs' objection today.").)
11 Indeed, even if blame could be assigned to both the Bradys and Grendene for the
12 disclosure in the joint discovery motion, the Protective Order allows disclosure where
13 information "becomes publicly known through no fault of the Receiving Party." (ECF
14 No. 38, at 5.) Whatever the Bradys' responsibility for the disclosure in the joint
15 discovery motion, at least *some fault* lies with Grendene because the language is
16 contained in Grendene's portion of the motion. Accordingly, the Court finds that KMQ
17 violated the Protective Order in referencing confidential statements from the Bradys'
18 daughter's deposition.

19      As the Bradys have shown by "clear and convincing evidence" that KMQ failed
20 to comply with the protective order, the burden shifts to KMQ to show "why they were
21 unable to comply." *In re Bennett*, 298 F.3d at 1069. KMQ makes no such showing.
22 Instead, KMQ admits that it "does not need any confidential information from the
23 Bradys to proceed with its claims" in the KMQ Action. (ECF No. 218, at 8.) As KMQ
24 concedes that the confidential information was not necessary to the KMQ Action, the
25 Court finds that KMQ failed "to take all reasonable steps" within its power to comply
26 with the Protective Order and thus holds KMQ in contempt pursuant to Rule 70(e).
27 *Reno Air Racing Ass'n*, 452 F.3d at 1130. The Court now turns to what the appropriate
28 sanction is for Grendene's and KMQ's noncompliance.

**B. Sanctions**

As remedies for contempt, the Bradys request that: (1) the Court order the dismissal of and payment of attorney fees for all four actions instituted by Grendene and KMQ, and (2) the Court bar KMQ from "hav[ing] access to AEO information in this action" because it has violated the Protective Order and is also now a party opponent to the Bradys in the KMQ Action. (ECF No. 210-1, at 13–14.) Grendene does not respond to the Bradys argument regarding AEO information. (*See* ECF No. 218, at 15–20.)

As an initial matter, the Bradys have not shown that they suffered any damage from KMQ's and Grendene's disclosure of confidential information and an award to the Bradys is limited to "their actual loss for injuries which result from the noncompliance." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 696 (9th Cir. 1993). Thus the Court does not find it appropriate to interfere with the actions initiated by Grendene and KMQ by either ordering a dismissal or awarding attorney fees. However, the Court does find it appropriate to bar KMQ from having access to  information designated AEO in this case. This is an appropriate remedy for KMQ's violation of the Protective Order and will ensure future compliance by KMQ.[4] This remedy is also a sufficient sanction on Grendene as it will force Grendene to rely more heavily on counsel other than KMQ.

**C. Vexatious Litigants**

The Bradys seek to declare KMQ and Grendene vexatious litigants and impose pre-filing orders on them. (ECF No. 210, at 14.) Grendene has filed three lawsuits against the Bradys and KMQ has filed one lawsuit against the Bradys. The Court finds that this minimal number of lawsuits is insufficient to support a pre-filing order based on the extreme nature of such a remedy. *Molski*, 500 F.3d at 1057. Moreover, the Bradys cite no legal authority to support their argument that the four lawsuits are

---

[4] Any concern that this could hinder Grendene's ability to defend this case is unwarranted as Grendene has other counsel in this case, namely Luedeka Neely Group, P.C., and is, of course, free to substitute other counsel. (*See* ECF No. 66.)

meritless and respond to each action with one or two conclusory sentences as to why that lawsuit lacks merit. (*See* ECF No. 210, at 15–16.) While these lawsuits may be substantially related to this case, they do seek relief that is different from what Grendene seeks to prevent the Bradys from obtaining in this case. Though KMQ's decision to institute a lawsuit against the party opponent of their client is somewhat concerning, the Court finds that barring KMQ from accessing AEO information is a sufficient remedy. The Court is also not convinced that Joanna Ardalan, the KMQ agent whose purchase forms the basis of the KMQ Action and who is also a member of the State Bar of California, "unambiguously" violated California Rule of Professional Conduct 2-100 as her communications were with the Bradys' daughter, not the Bradys, and it is unclear whether she was representing Grendene as an attorney or merely making a purchase on KMQ's behalf. (ECF No. 210, at 6; *see also* ECF No. 68-4.) Accordingly, the Court DENIES the Bradys' motion to declare KMQ and Grendene vexatious litigants.

## VI. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The Bradys' Motion for Contempt for Repeated Violations of Protective Order, and to Declare Defendants Vexatious Litigants, (ECF No. 210), is **GRANTED** as to holding KMQ and Grendene in contempt and **DENIED** as to declaring KMQ and Grendene vexatious litigants;

2. KMQ and Grendene are held in contempt and KMQ is barred from accessing information designated "Confidential – Attorneys' Eyes Only" pursuant to the Protective Order in this case, (*see* ECF No. 38, at 7–8); and

3. The hearing set for May 1, 2015 is **VACATED**.

DATED:  April 29, 2015

HON. GONZALO P. CURIEL
United States District Judge