FILED

2015 JUL 24  PM 3: 22

SOUTHERN DISTRICT COURT
TH

1
2
3
4
5
6
7
8    **UNITED STATES DISTRICT COURT**
9    **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  JAMES W. BRADY and PATRICIA M. BRADY, | CASE NO. 12cv604-GPC(KSC) |
| 12 | **ORDER GRANTING IN PART** |
| Plaintiff, | **AND DENYING IN PART JOINT** |
| 13  vs. | **MOTION TO COMPEL** |
| | **RESPONSIVE RULE 30(b)(6)** |
| 14 | **TESTIMONY AND OTHER** |
| 15  GRENDENE USA, INC., *a Delaware corporation*, and GRENDENE S.A., *a Brazil corporation*, | **ISSUES** |
| 16 | [Doc. 194] |
| 17  Defendant. | |

18
19      Before the Court is a Joint Motion filed by the defendants on March 3, 2015.[1]
20   [Doc. 194] By way of background, the parties have now filed 15 Motions and Joint
21   Motions and more than 3,100 pages of briefing and exhibits on substantive discovery
22   disputes in this case. [Docs. 34, 68, 70, 74, 78, 88, 143, 161, 162, 172, 176, 179, 186,
23   194, 243] The instant Joint Motion presents the defendants' request for a Court Order
24   compelling the plaintiffs to produce: 1) an additional Rule 30(b)(6) witness for the
25   plaintiffs' company, Made In Brazil, Inc. ("MIB"); 2) the home address of the
26   plaintiffs' daughter; 3) the plaintiffs' litigation costs and fees since May 2014; 4) tax

27      [1] On June 3, 2015, the District Court issued an Order granting summary
28   judgment for the defendants. [Doc. 295] Because a judgment has not been entered,
     however, this Court resolves the pending discovery dispute between the parties.

records relating to MIB's sales and operations in 2013; and 5) communications with MIB's Social Media Manager, Gabriela Moreno. *Id.* The defendants also request attorneys' fees. *Id.* at 38. The plaintiffs oppose the defendants' requests.

The scope of discovery under Rule 26(b) is broad: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party involved in the pending action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). This Court has broad discretion when determining relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.") (internal citations omitted). However, this discretion should be balanced with the obligation to interpret the Rules in order to secure a "just, speedy, and inexpensive determination" of the action. FED. R. CIV. P. 1.

For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the defendants' requests in the Joint Motion. This Court will consider each of the defendants' five requests, and the plaintiffs' opposition thereto, in turn. The Court declines to award attorneys' fees.

## I. DEFENDANTS' MOTION TO COMPEL
## ADDITIONAL RULE 30(b)(6) TESTIMONY

### A. Background

On May 15, 2014, the defendants noticed the deposition of the plaintiffs' company, Made in Brazil, Inc., ("MIB") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. [Doc. 194-2, Ex. A, p. 2] The notice identified 30 deposition topics including, *inter alia*:

> Topic 1: YOUR sale of PLAINTIFFS' GOODS in the United States from January 1, 2006, through the present.

Topic 3: YOUR licensing, distribution, sales, design, manufacturing AND/OR marketing of PLAINTIFFS' GOODS from January 1, 2006, through the present.

Topic 5: Gross revenues and net profits from sales of PLAINTIFFS' GOODS in the United States by product type, from January 1, 2006, through the present.

Topic 8: YOUR annual advertising and marketing expenditures from each year from January 1, 2006, to the present.

Topic 10: All products bearing PLAINTIFFS' MARKS that YOU sold, distributed, manufactured, AND/OR marketed from January 1, 2006, through the present.

[Doc. 194-2, Ex. A, pp. 6-7]

The plaintiffs designated James Brady to testify as the Rule 30(b)(6) representative for MIB, and his deposition commenced on January 8, 2015.[2] [Doc. 194-2, Ex. B (sealed)] In the deposition, Mr. Brady was unable to answer questions about certain business activities of MIB in the 2014-2015 year, including: 1) how many swimsuits MIB delivered or shipped to stores or purchasers, *id.* at 6-7; 2) how many online orders for swimsuits MIB received, *id.* at 8; 3) how many online orders for swimsuits MIB fulfilled, *id.*; 4) whether and when MIB sold products on consignment, *id.* at 23; 5) how many "pop-up shops" MIB operated to sell its items to individuals, *id.* at 24-25; and 6) what expenses were incurred for each "pop-up" shop, *id.* Throughout the deposition, Mr. Brady repeatedly stated that his daughter, Patricia M. Brady ("Ms. Brady"), an employee of the company, would be the person most knowledgeable to answer questions about these and other topics. *Id.* at 8, 9, 13, 18, 21,

---

[2] As discussed in this Court's March 27, 2015, Order, the parties improperly combined the individual and Rule 30(b)(6) depositions of certain witnesses, including Mr. Brady. [Doc. 209, p. 7] (citing [Doc. 187, p. 3]). The Court has reviewed the portions of the Mr. Brady's deposition transcript that are at issue in this dispute, and concludes that at all relevant times Mr. Brady was questioned in his capacity as the Rule 30(b)(6) designee for MIB. *See* [Doc. 194-2, Ex. B (sealed)] ("I would like to ask about certain activities of Made In Brazil, Inc....")

1   22, 23, 25. Mr. Brady was also unable to provide the gross sales figures for MIB in

2   2014, *id.* at 26, which the plaintiffs now state is because the gross sales figures for

3   2014 were unavailable by the date of Mr. Brady's deposition in early January. [Doc.

4   194, p. 29]

5   　　　In the instant Joint Motion, the defendants ask this Court to compel the plaintiffs

6   to produce their daughter to testify about the five above-referenced Rule 30(b)(6)

7   topics for which they feel Mr. Brady was unprepared. [Doc. 194, p. 2] While the

8   plaintiffs concede that Mr. Brady was unable to answer some of the questions

9   identified above, they posit that the defendants did not provide reasonable notice that

10  they expected Mr. Brady to answer specific questions about MIB's shipping orders,

11  online orders, or consignment sales. *Id.* at 28. The plaintiffs argue that the defendants'

12  request should be denied because the questions Mr. Brady could not answer were not

13  within the scope of a noticed topic. *Id.* at 31.

14  　　　The parties met and conferred telephonically about this dispute on February 2,

15  2015. [Doc. 195, p. 5] The plaintiffs offered to produce Ms. Brady to testify for one

16  hour as an additional Rule 30(b)(6) designee for MIB. [Doc. 194, p. 30; Doc. 195, p.

17  6] However, the plaintiffs' offer was conditioned upon the defendants agreeing to make

18  their two Rule(b)(6) witnesses available for three additional hours each.[3] [Doc. 194, p.

19  30; Doc. 195, p. 6]  The defendants would not so agree, and the instant Joint Motion

20  followed.

21  **B. Discussion**

22  　　　Rule 30(b)(6) provides that, "[i]n its notice or subpoena, a party may name as the

23  deponent a public or private corporation, a partnership an association, a governmental

24  agency, or other entity and must describe with reasonable particularity the matters for

25  examination.  The named organization must then designate one or more officers,

26  

27  　　　[3] The plaintiffs' request to reconvene the depositions of the defendants' Rule
    30(b)(6) depositions was the subject of a separate Joint Motion that was pending at the

28  time the instant Joint Motion was filed. *See* [Doc. 186] The plaintiffs' request was
    subsequently denied by this Court in an Order dated March 27, 2015. [Doc. 209]

directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" FED. R. CIV. P. 30(b)(6). "The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition." *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (citations omitted).

A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. FED. R. CIV. P. 30(b)(6). "However, the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of a designated witness at a deposition. The 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Louisiana Pac. Corp.*, 285 F.R.D. at 486 (citations omitted).

Contrary to the plaintiffs' assertions, this Court finds that the questions which Mr. Brady was unprepared to answer are directly relevant to the 30 topics noticed by the defendants. Questions about MIB's online orders and consignment sales fall under the category of sale of plaintiffs' goods (topics one, ten); questions about MIB's shipping fall under the category of the distribution of plaintiffs' goods (topics three, ten); and questions about pop-up shops and their expenses fall under the category of marketing and annual advertising expenditures (topics three, eight). The defendants are also entitled to an answer about the 2014 gross sales of MIB (topic five), now that the information is presumably available.

This Court orders the plaintiffs to produce the person most knowledgeable ("PMK") to testify about the five deposition topics referenced above. This Court will not order the plaintiffs to produce Ms. Brady, as it is within the discretion of the corporate entity to select their Rule 30(b)(6) designee. *See* FED. R. CIV. P. 30(b)(6). However, this Court finds it telling that Mr. Brady reported that his daughter would be the PMK on the questions that he was unable to answer. During the reconvened Rule

1   30(b)(6) deposition, the defendants are limited to asking questions that are related to

2   the five deposition topics that are the subject of this Order.

3        Having found that the defendants are entitled to additional deposition time, the

4   question now is how much additional time they should be granted.  Rule 30(d)(1)

5   states, "[t]he court must allow additional time consistent with Rule 26(b)(2) if needed

6   to examine the deponent[.]" FED. R. CIV. P. 30(d)(1).  After reviewing the transcript of

7   Mr. Brady's January 8, 2015, deposition, and in light of this Court's familiarity with

8   the parties and issues in this case, this Court ascertains that two hours should be

9   sufficient to complete the Rule 30(b)(6) deposition of MIB.

10        In conclusion, the Court GRANTS the defendants' request to compel the

11   continued deposition of MIB for a period of two hours.  The plaintiffs are to produce

12   a witness who is the PMK to testify about the five topics at issues in this Order.  The

13   deposition is to take place no later than **August 14, 2015,** or on a later date mutually

14   agreed upon by the parties prior to the Pre-Trial Conference.[4]  The parties are to evenly

15   split the cost of the continued deposition, as both parties bear responsibility for the

16   events giving rise to this dispute.[5]

17   / /

18   / /

19   

20       [4] The parties may wish to postpone taking additional deposition testimony in
light of Judge Curiel's recent Order granting summary judgment and the pending
21   Motion for Reconsideration. [Doc. 305] The parties may do so without seeking leave
22   of this Court.

23       [5] The plaintiffs bear responsibility for inadequately preparing Mr. Brady to
testify on the 30(b)(6) topics noticed by the defendants.  The defendants, however,
24   have repeatedly demonstrated throughout this case that they are unwilling to
compromise on even minor issues.  The defendants have repeatedly filed voluminous
25   motions (including those raising disputes that have already been decided by the Court,
see [Docs. 74, pp. 13-24; Doc. 161; Doc. 162]) that tax the plaintiffs' and this Court's
26   resources.  Were the defendants more inclined to compromise, the instant dispute
27   would likely have been resolved by the plaintiffs' offer to produce Ms. Brady to testify
for one additional hour of Rule 30(b)(6) testimony.  The Court concludes that the
28   parties share equal responsibility for the instant dispute.

12cv604-GPC(KSC)

## II. DEFENDANTS' MOTION TO COMPEL
## PRODUCTION OF Ms. BRADY'S HOME ADDRESS

The defendants seek a Court Order compelling the plaintiffs to release the home address of their daughter, Ms. Brady, ostensibly on the grounds that she testified that she sold swimsuits through "pop-up shops" operated out of her home. [Doc. 194, p. 14] The defendants have failed to show how Ms. Brady's specific street address is relevant to defending the litigation. Even if the information were relevant, this Court would find Ms. Brady's privacy interests outweigh any possible benefit the defendants might derive from the information.[6] This request is DENIED.

## III. DEFENDANTS' REQUEST FOR INFORMATION REGARDING
## LITIGATION FEES AND COSTS

The defendants request a Court Order compelling the plaintiffs to produce the costs and fees they have incurred in this litigation since May 2014, and the manner in which the plaintiffs are billed by their counsel. [Doc. 194, p. 15] The defendants assert that this information is relevant and discoverable because the plaintiffs are seeking to recover their costs and fees in this litigation. *Id.* While the plaintiffs agree that they will seek recovery of their costs and fees should they prevail in the litigation, they assert that the defendants' request is premature. *Id.* at 32.

This Court agrees with the plaintiffs. Under Rule 54(d) of the Federal Rules of Civil Procedure, claims for attorneys' fees in cases of this nature are made by motion following trial. FED. R. CIV. P. 54(d)(2)(A). At this stage in the litigation, the plaintiffs are not a prevailing party. After trial, if the plaintiffs prevail, they may then formally move to recover their costs and fees. The defendants may, at that time, apply to this Court to open discovery on the issue. This request is DENIED.

---

[6] This Court's decision is informed by defense counsel's admission at the Mandatory Settlement Conference that immediately before the conference, he and his client representatives showed up unannounced at Ms. Brady's place of work – a retail shop that is not yet open to the public. Counsel actually entered the space while the other men looked through the window and remained just outside the shop while Ms. Brady was inside alone, until a male acquaintance of Ms. Brady's asked the men to leave. This conduct was confrontational and unnecessary.

## IV.  DEFENDANTS' REQUEST FOR MIB'S 2014 TAX RECORDS

### A.  Background

In their second set of Requests for Production served upon the plaintiffs on November 20, 2014, the defendants request MIB's tax records for 2013 and "records of employment taxes relating to plaintiffs' daughter Patricia Brady." [Doc. 194-6, Ex. E, pp. 71-72] The defendants objected to these requests on an unknown date on relevance and privacy grounds. [Doc. 194, p. 17] The parties met and conferred on January 8, 2015, but were unable to resolve their disagreement. [Doc. 194-10, Ex. I]

The defendants assert (and the plaintiffs do not dispute) that in May 2013, the plaintiffs affirmed under oath to the U.S. Patent and Trademark Office ("USPTO") that they continuously used their Ipanema and Girl from Ipanema trademarks. [Doc. 194, p. 18] In purported contrast to their assertion of continued use to the USPTO, however, the plaintiffs took the position in this litigation (at least initially) that they made no sales of their trademarked products in 2013. *See* [Doc. 74, p. 5] (Joint Motion for Determination of Discovery Dispute in which plaintiffs admit no sales of swimsuits under the Ipanema mark in 2013). Changing course again, in November 2014, Ms. Brady testified in a deposition that in fact she did sell a number of swimsuits and other items on behalf of MIB during the 2013 year. [Doc. 203, Ex. C, p. 40 (sealed)] She testified that these sales were made to friends or friends of friends, in cash, and without documentation, but that she reported the sales to her parents. *Id.* at 40-41.

When deposed in January 2015, Mr. Brady affirmed that Ms. Brady had sold a number of items on behalf of MIB in 2013. [Doc. 203, Ex. B, pp. 13-14 (sealed)] However, he testified that he had only learned of those sales since Ms. Brady's deposition two months prior. *Id.* He further reported that MIB's 2013 tax return reflects no sales of products for the 2013 year, and to date he has not filed an amended tax return. [Doc. 208, Ex. A, p. 7 (sealed)]

Today, the defendants seek a Court Order compelling the plaintiffs to produce MIB's 2013 tax records. [Doc. 194, pp. 17-24] The defendants assert that these tax

1  records will show that the plaintiffs' statements to the USPTO were false, which will

2  support an unclean hands defense or, in the alternative, a suit to cancel the plaintiffs'

3  marks. *Id.* at 18-19. The plaintiffs respond that disclosure of MIB's tax records would

4  be contrary to public policy and irrelevant, as the defendants have obtained the

5  information they seek through Mr. Brady's sworn testimony. *Id.* at 34-36. Neither

6  party disputes that it is relevant that the Bradys reported no sales in their 2013 tax

7  returns. The question before this Court is whether the defendants are entitled to the

8  actual hard-copy 2013 tax return, or whether they should be limited to recovering the

9  information through Mr. Brady's deposition testimony.

10      The defendants also seek a Court Order compelling the plaintiffs to produce

11  employment tax records relating to Ms. Brady. [Doc. 194, pp. 17-24] Again, the

12  defendants assert that these records are relevant to the question of whether the plaintiffs

13  continued to use the challenged marks during 2013. *Id.* at 21. Ms. Brady testified at

14  her deposition in November 2014 that she sold a certain number of swimsuits and

15  dresses to friends and friends of friends. [Doc. 203, Ex. C, p. 40 (sealed)] She testified

16  that the sales were for cash and none were documented. *Id.* The defendants now

17  challenge whether Ms. Brady sold those products in 2013 as an employee of MIB, or

18  whether she made those sales in her own name. [Doc. 194, p. 21] They assert that

19  MIB's employment tax records are relevant to determining the capacity in which Ms.

20  Brady conducted the sales. *Id.* The plaintiffs respond that Ms. Brady's status as an

21  employee versus independent contractor is irrelevant to whether the Ipanema product

22  name was in use in commerce in 2013. *Id.* at 19.

23  **B. Discussion**

24      The plaintiffs correctly point out that federal law recognizes a privilege that

25  protects tax returns from disclosure, although that privilege is not absolute. *Premium*

26  *Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). The Ninth

27  Circuit recognizes "a public policy against unnecessary public disclosure [that] arises

28  from the need, if the tax laws are to function properly, to encourage taxpayers to file

1    complete and accurate returns." *Id.* (citations omitted).  However, as now-Chief Judge
2    Moskowitz of this District recognized, "[u]nder federal law, tax returns are generally
3    discoverable where necessary in private civil litigation." *Young v. United States*, 149
4    F.R.D. 199, 201 (S.D. Cal. 1993).

5           Interpreting *Premium Service*, courts in this Circuit have formulated a two-prong
6    test for deciding whether to compel the production of tax records in discovery.  *See,*
7    *e.g., Dunfee v. Truman Capital Advisors, LP*, 12cv1925-BEN (DHB), 2013 WL
8    6118361 (S.D. Cal. Nov. 20, 2013); *Zuniga v. Western Apartments*, 13cv4637-JFW
9    (Jcx), 2014 WL 2599919 (C.D. Cal. March 25, 2014).  *But see Advanced Microtherm,*
10   *Inc. v. Norman Wright Mech. Equip. Corp.*, 04cv2266-JW (PVT), at *1, 2009 WL
11   3320421 (N.D. Cal., Oct. 9, 2009) (rejecting two-prong test).  To ensure a proper
12   balance between the liberal scope of discovery and the policy favoring the
13   confidentiality of tax returns, courts generally inquire, first, whether "the returns are
14   relevant to the subject matter of the action," and, second, whether "there is a
15   compelling need for the returns because the information contained therein is not
16   otherwise readily obtainable." *A. Farber & Partners, Inc., v. Garber*, 234 F.R.D.
17   186,191 (C.D. Cal. 2006).  One court in this District has held that "[t]he party seeking
18   production has the burden of showing relevancy, and once that burden is met, the
19   burden shifts to the party opposing production to show that other sources exist from
20   which the information is readily obtainable." *Dunfee*, 2013 WL 6118361, at *4
21   (citations omitted).

22          Adopting this legal standard as interpreted by other courts, this Court finds that
23   the defendants have met their burden of demonstrating that MIB's 2013 tax returns are
24   relevant.  Whether or not MIB sold products under the challenged marks in 2013 bears
25   directly upon Grendene's defenses in this case, and MIB's tax return is probative
26   evidence of the company's 2013 sales.  Furthermore, this Court finds that the plaintiffs
27   have not met their burden of showing that the information sought by the defendants is
28   sufficiently available from other sources.  The plaintiffs urge the Court to find that the

1 | information contained in the tax records may be found in Mr. Brady's sworn deposition
2 | testimony – in which he admitted that MIB's 2013 tax returns reported no sales.
3 | However, the defendants have successfully demonstrated numerous inconsistencies
4 | between Mr. and Ms. Brady's testimony about the 2013 sales that cast doubt on Mr.
5 | Brady's credibility or his ability to recall such details.[7]  This Court concludes that the
6 | sales information contained in MIB's 2013 tax records is not readily obtainable from
7 | other sources, and thus that production of these records to the defendants is
8 | appropriate.

9 | Under the broad scope of Rule 26, this Court also finds that the defendants have
10 | shown the relevance of MIB's 2013 employment tax records relating to Ms. Brady.
11 | Ms. Brady testified that she sold numerous items under the Ipanema mark in 2013.
12 | [Doc. 203, Ex. C, pp. 39-40] These are the only items that the plaintiffs claim were sold
13 | under their mark during 2013.  The defendants now challenge whether Ms. Brady sold
14 | those items as an employee of her parents' company or in her own personal capacity.
15 | Ms. Brady is not a named plaintiff in this case, nor is it alleged that she personally
16 | owns the challenged trademarks.   If Ms. Brady sold the Ipanema products as an
17 | employee of her parents' company, it would tend to strengthen their argument that they
18 | continuously used the Ipanema mark throughout 2013.   Though Ms. Brady today
19 | asserts that she is an employee of MIB, *see* [Doc. 198, p. 2] the Court finds that the
20 | circumstances of the 2013 sales (all cash, undocumented, perhaps not even reported to
21 | her parents until November 2014) raise a doubt as to whether she was acting as an
22 | agent of her parents' company at the time.   The Court concludes that the employment

23 |
24 |

25 | [7] For example, Ms. Brady's deposition testimony implies that she reported the
26 | 2013 swimsuit sales to her parents early enough that they could have included the sales
in their 2013 tax returns. *See* [Doc. 203, Ex. C, p. 41 (sealed)]. Mr. Brady asserts that
27 | he did not learn of the sales until after his daughter was deposed in November 2014.
[Doc. 203, Ex. B, pp. 13-14 (sealed)] Mr. Brady notes that his daughter's recollection
28 | of the relevant facts contradicts his own. *Id.* at 14 ("[S]he told me she believed she had
informed me earlier, and I did not recall having been informed.").

records that the defendants seek are reasonably calculated to lead to the discovery of relevant evidence on this issue, and orders the plaintiffs to produce them.

Accordingly, the defendants' request to compel production of MIB's 2013 tax records and 2013 employment tax returns relating to Ms. Brady is GRANTED.  The documents are to be produced no later than **August 14, 2015,** or on a later date mutually agreed upon by the parties prior to the Pre-Trial Conference.[8]  Information contained in these returns that is unrelated to MIB's 2013 sales and Ms. Brady's status as an employee with the company may be redacted.  To further protect the parties' privacy, these records may be designated confidential under the Court's Protective Order.

## V. DEFENDANTS' REQUEST FOR COMMUNICATIONS WITH GABRIELA MORENO OR PRODUCTION OF COMPUTERS FOR FORENSIC INSPECTION OR ADMISSION THAT DOCUMENTS HAVE BEEN DESTROYED

### A. Background

Gabriela Moreno, the Social Media Manager for MIB, testified in a deposition that she communicated with Ms. Brady about the MIB business by email or phone. [Doc. 194-5, Ex. D, p. 20] When asked how many emails per day she sent to Ms. Brady, she responded, "from none to three." *Id.* at 21.  In their Second Set of Requests for Production dated November 20, 2014, the defendants requested, *inter alia*, all communications with Gabriela Moreno concerning MIB and the marketing, sales, design and distribution of the plaintiffs' goods. [Doc. 194-6, Ex. E, p. 9] The plaintiffs indicate that they are willing to produce the communications, but the majority of the responsive communications between Ms. Brady and Ms. Moreno cannot be retrieved. *See* [Doc. 194, pp. 36-38]

---

[8] The parties may wish to postpone taking additional deposition testimony in light of Judge Curiel's recent Order granting summary judgment and the pending Motion for Reconsideration. [Doc. 305] The parties may do so without seeking leave of this Court.

1    Plaintiff's counsel informed defense counsel in a telephonic meet-and-confer on
2    February 2, 2015, that Ms. Brady and Ms. Moreno were unable to locate any emails
3    responsive to the defendants' request. [Doc. 195, p. 5] On an unknown date after the
4    meet and confer, the plaintiffs produced three emails that Ms. Moreno reportedly
5    recently located. [Doc. 194, p. 26; Doc. 199, p. 2] Today, the plaintiffs take the position
6    that Ms. Brady and Ms. Moreno infrequently communicated by email, and instead
7    relied primarily on text messages and a smartphone application called WhatsApp. [Doc.
8    194, pp. 36-38] They assert that they are unable to retrieve the text or WhatsApp
9    messages today because the three phones that Ms. Brady and Ms. Moreno used to send
10   the messages have been destroyed, stolen or lost. *Id.*[9] Ms. Moreno states in a
11   Declaration dated February 20, 2015, that she "misspoke" when she testified in her
12   deposition that she communicated with Ms. Brady primarily by email. [Doc. 199, p. 2]

13       The defendants discount Ms. Moreno's Declaration testimony that she
14   "misspoke" in her deposition about sending up to three emails per day to Ms. Brady.
15   [Doc. 194, p. 26] They believe that Ms. Moreno and Ms. Brady exchanged far more
16   emails than the three that have been produced, and they urge this Court to order a
17   forensic examination of the plaintiffs' computer to retrieve any email messages that
18   have not been produced. *Id.* In the alternative, the defendants urge this Court to
19   compel the plaintiffs to admit that they failed to preserve any such communications "so
20   that Grendene may seek appropriate relief." *Id.* at 28. By contrast, the plaintiffs urge
21   this Court to accept the testimony of Ms. Brady and Ms. Moreno and deny the

22

23   ---------------

24   [9] Ms. Brady testified in a Declaration dated February 20, 2015, that she
     accidentally dropped the mobile phone she used to communicate with Ms. Moreno in
25   a hot tub on October 7, 2014. [Doc. 198, p. 2] Ms. Moreno testified in a Declaration
     dated February 20, 2015, that the first mobile phone she used to communicate with Ms.
26   Brady was stolen on March 19, 2014 (an email to the New York Police Department
     regarding her stolen phone is attached as Exhibit B to the Declaration). [Doc. 199, p.
27   3] She states that the second mobile phone that she used to send these messages was
28   lost in July 2014. *Id.*

defendants' Motion on the grounds that all relevant emails have been produced, and all telephonic communications are unretrievable due to circumstances outside the plaintiffs' control. *Id.* at 38.

## B. Discussion

Given the legitimate privacy and other interests at issue, absent "specific, concrete evidence of concealment or destruction of evidence," courts are generally cautious about granting a request for a forensic examination of an adversary's computer. *Advante Int'l Corp. v. Mintel Learning Tech.*, 05-01022 JW (RS), 2006 WL 1806151, at *1 (N.D. Cal. June 29, 2006); *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008). "[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *John B.*, 531 F.3d at 460 (citing *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001)).

This Court finds that the defendants have demonstrated more than just "mere skepticism" that Ms. Brady and Ms. Moreno exchanged more than three relevant emails during the months that Ms. Moreno worked as MIB's social media manager. Not only did Ms. Moreno originally testify that she sent up to three emails *per day* to Ms. Brady about MIB and the Ipanema brand, [Doc. 194-5, Ex. D, p. 21] but this Court has also carefully reviewed the three emails that have been produced and concludes that they suggest a larger conversation that took place over email.[10] All three emails were authored by Ms. Moreno; none of Ms. Brady's responses were produced. All three emails were also sent in a span of 48 hours (two less than 35 minutes apart), and

---

[10] For example, the Court has compared the three produced emails with an email written by Ms. Moreno to the New York Police Department about her lost cell phone. [Doc. 199-3, Ex. B, p. 2] Ms. Moreno's email to the NYPD begins with a salutation ("Hi,") and ends with her full signature. *Id.* Ms. Moreno's emails to Ms. Brady do not contain these stylistic hallmarks, which suggest that the three emails produced in discovery may be part of an ongoing conversation rather than stand-alone messages.

1  this Court is skeptical that Ms. Moreno would send three emails in 48 hours and no
2  other emails for the rest of the time during her employment with MIB.

3        The plaintiffs have also failed to persuade this Court that their self-directed
4  efforts to retrieve and retain relevant emails have been effective. On February 5, 2015,
5  – more than two months after the defendants served their Second Set of Requests for
6  Production – plaintiffs' counsel notified defense counsel that no responsive emails had
7  been found. [Doc. 194-20, Ex. S, p. 2] Days later, however, plaintiffs' counsel
8  produced three responsive emails from Ms. Moreno's account. [Doc. 194, p. 5, n.4;
9  Doc. 208-1 (sealed)] This suggests that the plaintiffs' initial search methods were either
10 untimely or inadequate. Furthermore, the plaintiffs have not explained why Ms. Brady
11 was unable to find any record of Ms. Moreno's emails in her own account. Finally, the
12 Court is incredulous that all three cell phones that Ms. Brady and Ms. Moreno used to
13 communicate about the business have been lost, stolen or destroyed.   These
14 circumstances    demonstrate    that    the    plaintiffs    have    not    reliably    retained
15 communications relevant to this litigation or to the operations of their business.

16       In conclusion, the defendants have met their burden of showing that the plaintiffs
17 have not produced all relevant communications between Ms. Brady and Ms. Moreno
18 regarding MIB and the Ipanema brand. If the plaintiffs had these documents in their
19 possession, the Court would compel them to produce them to the defendants.
20 However, this Court accepts the plaintiffs' representations that the bulk of these
21 communications cannot be retrieved at this time.  This Court is now tasked with
22 identifying a remedy for the situation that is not unduly burdensome or costly and
23 which furthers the goal of a "just, speedy, and inexpensive determination" of the action.
24 FED. R. CIV. P. 1.

25       The defendants have suggested two different remedies for the plaintiffs' failure
26 to produce the communications. [Doc. 194, p. 28] After reviewing the briefing
27
28

submitted by the parties, however, the Court is not persuaded that either remedy is appropriate at this time. The defendants first suggest that the Court order a forensic examination of Ms. Brady's computer. *Id.* The defendants have not established through declaration or exhibit, though, that such an examination is likely to yield emails that have been deleted or purged. The defendants have also not established that the missing emails are so central to their defense of this case as to require the extreme remedy of a forensic examination, as opposed to, for example, sanctions.[11] The defendants secondarily suggest that the Court compel the plaintiffs to admit that they failed to preserve the communications in question "so that Grendene may seek appropriate relief." *Id.* The defendants have not cited to any case law, however, to support their assertion that the plaintiffs should have served Ms. Moreno with a litigation hold notice. *See id.* at 27. The plaintiffs have not responded to the defendants' arguments that Ms. Moreno was under legal obligation to preserve the communications in question. *Id.* at 36-38.

This Court is also mindful that Judge Curiel's recent Order granting summary judgment may render this dispute moot. Accordingly, at this time, the Court finds good cause to DENY the defendants' request for relief. This ruling is made without prejudice to the defendants filing supplemental briefing at a later point in the litigation, if the dispute is no longer mooted by Judge Curiel's recent Order – even if the subsequent filing falls outside of the 45-day timeframe that typically governs discovery disputes. *See* CRAWFORD CHAMBERS RULE V.A. Any additional briefing should be submitted in the form of a supplemental Joint Motion that incorporates the position statements of both parties.

---

[11] To date, the defendants have only articulated a remote need for the emails. If, going forward, the defendants are able to demonstrate that the missing emails are centrally relevant to their case, this Court's analysis may change.

## VI. CONCLUSION

In conclusion, the Court GRANTS IN PART and DENIES IN PART the defendants' requests in this Joint Motion. In accordance with this Order:

(1) The plaintiffs are to produce a person most knowledgeable to continue the Rule 30(b)(6) deposition of MIB for a total of two additional hours of testimony, with costs to be split equally between the parties. The defendants' request is GRANTED.

(2) The defendants' request for Ms. Brady's home address is DENIED.

(3) The defendants' request for the plaintiffs' attorneys fees, costs, and billing arrangement is DENIED.

(4) The plaintiffs are to produce MIB's 2013 tax returns and 2013 employment tax records relating to Ms. Brady, though the documents may be redacted and produced under the Protective Order as outlined above. The defendants' request is GRANTED.

(5) The defendants' request to compel a forensic computer examination or an admission that the plaintiffs destroyed relevant communications is DENIED WITHOUT PREJUDICE to the parties supplying additional briefing on the issue, as outlined above.

Subsequent production of witnesses and evidence should occur by **August 14, 2015,** though the parties may postpone this production by mutual agreement without seeking the Court's approval in light of Judge Curiel's Order granting summary judgment. [Doc. 295] Because the Court finds that both parties contributed to the events giving rise to the Joint Motion, the Court declines to award attorneys' fees.

IT IS SO ORDERED.

Date: July _24_, 2015

KAREN S. CRAWFORD
United States Magistrate Judge

- 17 -

12cv604-GPC(KSC)